## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**DIANE GAINER,**

                        Plaintiff,

                                          Case No. 2:11-cv-14331

vs.                                     Hon. Gerald E. Rosen

**WAL-MART STORES EAST, L.P.,**

                        Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This relatively simple slip-and-fall case presents a law school examination-type question which tests the boundaries of the present sense impression and excited utterance exceptions to the general prohibition against hearsay testimony. Specifically, it examines the extent to which hearsay statements themselves can be used to prove the actions and circumstances surrounding the event which actually prompted their utterance.

On August 30, 2011, Plaintiff Diane Gainer filed this action in Wayne County Circuit Court, alleging that Defendant Wal-Mart Stores East, L.P., is liable for injuries sustained as a result of her slip-and-fall in Defendant's store on September 13, 2008. Defendant removed the action to this Court on September 30, 2011, pursuant to 28 U.S.C. §§ 1441(a) and 1445(a). Following discovery, Defendant filed the present motion for summary judgment on June 29, 2012.

## II. FACTUAL BACKGROUND

This case began in the mid-morning of September 13, 2008, when Plaintiff Diane Gainer and her daughter, Angela Bell, drove to Defendant's Livonia, MI location. Ms. Bell and Plaintiff parked towards the back of the lot, which was wet and covered with puddles from that morning's rainstorm. It does not appear that it was raining when Plaintiff and her daughter arrived at the store.

Plaintiff and her daughter walked across the parking lot, approached the store's entrance, and passed through the first of two sets of automatic sliding doors into a vestibule. The vestibule -- comprising of the area between the two sets of automatic doors -- was about 10 feet in length and contained a shiny, glassy-looking, dark-colored floor. The second set of doors leads from the vestibule into the store itself. The parties dispute whether or not the floor was covered with mats, but it is undisputed that no warning signs or cones were posted to alert invitees of any danger.

Plaintiff's daughter passed through the doors first and was about four feet ahead of Plaintiff when she stopped to let her mother catch up. Plaintiff walked "very carefully" over the same ground just traversed by her daughter, and was "looking down" at the ground as she walked. Neither Plaintiff nor her daughter saw anything on the ground, and her daughter did not warn her to be careful.

Plaintiff suddenly began to fall. She reached out to hold on to her daughter, but could not reach, and eventually lost her footing and fell on her bottom, breaking her wrist and allegedly incurring a number of other injuries.

Several customers came to help Plaintiff to her feet, allegedly stating that "[other] people had came in and almost went down because they didn't have mats or cones out there."  Pl. Dep. 46-47.  According to Ms. Bell, the unidentified customers were "very upset," stating "they [Defendant] were just mopping the [mother f--king] floor.  Why didn't they put mats out or signs out?"  Bell Dep. 39-40.  The customers helped Plaintiff off the floor and seated her on a bench, where she met with a Wal-Mart employee about her fall and had her daughter fill out an Incident Report on her behalf.  A security guard was positioned beyond the second set of doors throughout the incident, but there is no evidence regarding the guard's identity or what he saw before, during, or after Plaintiff's fall.

In her deposition, Plaintiff was asked about the cause of her fall.  The transcript reads as follows:

(By counsel)

Q:     What do you believe caused you to slip and fall in the vestibule?

A:     Water on the floor.

Q:     Do you think anything else caused you to fall?

A:     No.

Q:     Was there anything in the area that blocked your view of the floor?

A:     It was nothing on the floor, it's just a wide open space that you just walk through.

Q:     Do you recall how much water was on the floor that you believe caused you to fall --

A:     I couldn't --

Q:    Diane, you've got to wait.  Do you believe, do you know how much water was on the floor that you believe you slipped in?

A:    No.

Q:    Do you know how that water got on the floor that caused you to fall?

A:    I guess someone had mopped out there I guess.

Q:    You think someone mopped?

A:    Yes, they told me someone had been out there mopping.

Q:    Who told you that?

A:    One of the customers.

Q:    Another customer told you that Wal-Mart had been mopping the vestibule?

A:    Uh-huh.

Q:    Is that a yes?

A:    Yes.

Q:    Who's this customer?

A:    I don't know their name.  You know what, I didn't talk [sic] nobody's name because I didn't realize that I had really hurt myself.

Q:    When did this customer tell you that they saw someone mopping the floor?

A:    Before I came in I believe.

Q:    Before you came into the vestibule?

A:    Before, I guess before, yes.

          * * * *

Q:    You were out of the parking lot when someone told you this?

4

A:     No, no, I was inside when they told me after I fell.

Q:     After you fell?

A:     Yes, ma'am.

Q:     And you were sitting on the bench?

A:     Before I could, when they was getting me up off of the floor, I could hear the customers, I could.

Pl. Dep. 55-57.

Later in her deposition, Plaintiff admitted that she does not know how the water got on the floor.  Pl. Dep. 61 ("Q: And you don't know how the water got on the floor? A: No, I don't.").  Further, Plaintiff claimed to possess no personal knowledge of: (i) when Wal-Mart last mopped the area; (ii) whether the area was wet mopped or dry mopped; (iii) whether a customer had recently spilled water or some other liquid in the vestibule; (iv) whether a customer had recently tracked-in rain water from the wet parking lot; (v) when the vestibule was last inspected by Wal-Mart; (vi) if any other customers fell or complained to Wal-Mart management about water in the vestibule; or (vii) how long the alleged water had been sitting in the vestibule prior to Plaintiff's fall. Plaintiff's daughter likewise was unable to assert personal knowledge of any of these facts.

Neither Plaintiff nor her daughter reported seeing water on the ground either before or after Plaintiff's fall.  When asked how she knew her fall was caused by water, and not something else, Plaintiff stated "[b]ecause when they got me up, my clothes [short pants and three quarter shirt sleeves] was damp from the fall."  Pl. Dep. 60.

Anne Greer, assistant manager of the Wal-Mart, stated in her affidavit that, "as part of my daily routine . . . I conduct multiple visual inspections (also known as "Safety Sweeps" and "Zoning") throughout the subject store, including the vestibule area" where Plaintiff fell.  Greer Aff. 1.  She further averred that "based on my inspections of the store, including the vestibule area, the floor was well maintained and free from substances, spills, debris and/or any other types of materials before Plaintiff reported the alleged incident.  Further, there were mats down on the vestibule area on said date."  Greer Aff. 2.  Finally, Greer stated that Wal-Mart had received no complaints or concerns about the vestibule area prior to Plaintiff's fall, and that several customers had safely traversed the vestibule prior to Plaintiff fall.

## III. DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the non-moving party.  *Pack v. Damon Corp.,* 434 F.3d 810, 813

6

(6th Cir. 2006).  It is well settled that "[t]he evidence of the non-movant is to be believed, and that all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, the evidence submitted by non-movant in opposition to a motion for summary judgment must be admissible evidence.  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("the party opposing the motion then may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must make an affirmative showing with proper evidence in order to defeat the motion.") (internal citations omitted).  More specifically, "[h]earsay evidence must be disregarded."  *Id.* (internal citations omitted).  Thus, this Court must grant summary judgment if Plaintiff cannot provide admissible evidence to support each element of its claim.

## B.      Plaintiff's failure to present admissible evidence of negligence requires summary judgment in Defendant's favor

To establish negligence under Michigan law, Plaintiff must demonstrate (i) that Defendant owed Plaintiff a legal duty; (ii) that Defendant breached that duty; (iii) that Plaintiff suffered injuries; and (iv) that Defendant's breach of duty was both the "cause in fact" and "legal cause" of those injuries.  *See, e.g.*, *Case v. Consumers Power Co.*, 463 Mich. 1, 6, 615 N.W.2d 17 (2000); *Skinner v. Square D Company*, 445 Mich. 153, 163-64, 516 N.W.2d 475 (1994).   There is no dispute that Plaintiff, as a customer at Defendant's store, was an invitee, and that Defendant owed Plaintiff "a duty to exercise reasonable care in order to protect the invitee [Plaintiff] from unreasonable risks created

7

by dangerous conditions" on the property. *Ogden v. Target Stores, Inc.*, 2007 WL 4358193, at *3 (E.D. Mich. Dec. 13, 2007) (citing *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516, 629 N.W.2d 384 (2001)). Thus, the first element of negligence is established without dispute.

The second element -- breach of duty -- is more troublesome. Although Defendant, as invitor, has a duty to exercise reasonable care, invitors "are not absolute insurers of the safety of their invitees." *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 610, 537 N.W.2d 185 (1995). "The mere fact that a customer slips and is injured on the premises of a storekeeper does not constitute actionable negligence." *J.K. Winfrey v. S.S. Kresge Co.*, 6 Mich. App. 504, 507, 149 N.W.2d 470 (1967).

To establish a breach of duty, Plaintiff must offer admissible evidence demonstrating that Defendant (i) knew or should have known about the dangerous condition and the unreasonable risk it created; (ii) should have expected that invitees would not discover the danger, or would otherwise fail to protect against it; and (iii) failed to exercise reasonable care to protect its invitees against the danger. *See Bertrand*, 449 Mich. at 610.

### 1. Plaintiff cannot demonstrate that Defendant knew or should have known about the alleged dangerous condition

The first prong Plaintiff must satisfy to demonstrate a breach of duty is that Defendant knew or should have known -- *i.e.*, had notice of -- the dangerous condition. Such a demonstration requires showing either (i) that Defendant created the risk through its own negligence; or (ii) that Defendant had actual or constructive notice of the risk.

8

*Ogden*, 2007 WL 4358193, at \*4 (E.D. Mich. Dec. 13, 2007).  If Plaintiff fails to provide admissible evidence to support at least one of these theories of notice, this Court will grant summary judgment in Defendant's favor.

> ### a.    Plaintiff cannot demonstrate that Defendant created the alleged dangerous condition

Plaintiff's primary theory of notice is that Defendant itself created the alleged dangerous condition when one of its employees mopped the floor, and Defendant was, therefore, on notice of the dangerous condition.  The only pieces of evidence indicating that an employee of Defendant mopped the vestibule are the purported statements of unidentified customers -- overheard by Plaintiff and her daughter -- exclaiming that someone "had been out there mopping" and was "just mopping the [mother f--king] floor."  Certainly, these out-of-court statements are offered to prove the fact that one of Defendant's employees mopped the floor, and Plaintiff does not argue that the statements are -- or could be -- offered for any other purpose.  As such, they constitute hearsay, and are only admissible if they fall under a recognized exception to the hearsay rule. *Alexander*, 576 F.3d at 558 ("Rule 56[] leaves no doubt about the obligation of a summary judgment opponent to make her case with a showing of facts that can be established by evidence that will be admissible at trial.").

Plaintiff offers these statements to prove that an employee of Defendant mopped the floor and contends, without any supporting argument, that they are admissible as

either (i) present sense impressions under Fed. R. Evid. 803(1)[1] or (ii) excited utterances under Fed. R. Evid. 803(2).[2]  First, a present sense impression requires that the statement (i) be made either contemporaneously with or immediately after the perceived event, *i.e.*, at the time of Defendant's employee's mopping, and (ii) describe or explain the event being perceived.  *See United States v. Phelps*, 572 F. Supp. 262, 265 (E.D. Ky. 1983) ("The proffered statement could not be considered a present sense impression under Rule 803(1), because the subject matter of the statement offered was not what the declarant was presently perceiving when the statement was made, but rather something which had occurred at a remote previous time, namely whenever the gym bag was placed in the trunk.").   The declarants' statements not only fail to demonstrate that they saw Defendant's employee mop the floor,[3] but also fail Rule 803(1)'s temporal requirement that their statements be made while or immediately after they supposedly observed that event.  The deposition testimony reflects that the unidentified declarants' statements were made immediately following Plaintiff's fall -- not Defendant's employee's mopping -- and there is nothing in the record indicating that Defendant's employee was mopping at the time of Plaintiff's fall.  The only indication of contemporaneity is declarants' claim that they were "just mopping," indicating that the floor had been mopped at some point

---

[1] "Present Sense Impression.  A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1).

[2] "Excited Utterance.  A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  Fed. R. Evid. 803(2).

[3] See *infra* § III.B.1.a.i.

before Plaintiff's fall.[4]  But whether "just" describes a matter of seconds, minutes, or even hours is pure speculation.  Further, the lack of any testimony or other corroborative evidence suggesting that the mopping employee was present at the time of the fall indicates that enough time had elapsed for the employee to have finished the alleged mopping and cleared the area.  Because it cannot be demonstrated beyond mere speculation that the event described in the statement -- Defendant's employee's mopping -- occurred contemporaneously with or immediately before the unidentified declarants' statements, the statements cannot be admitted as present sense impressions.

Next, with respect to Rule 803(2), accepting Plaintiff's position would blur critical distinctions under this Rule, as it is necessary to distinguish between the event being described in the statement -- Defendant's employee's mopping -- and the exciting event which provides a basis for application of the exception: Plaintiff's slip-and-fall.  While a description of the fall itself may be admissible as an excited utterance,[5] the alleged

_____

[4] The fact that this statement itself contains the only evidence of record as to the critical contemporaneity requirement of this hearsay exception raises the always challenging issue of "bootstrapping," *i.e.*, whether the statement itself can, by itself, fully establish the prerequisites to its admissibility where there is no other evidence -- direct or circumstantial -- to support such a finding.  Here, this is clearly a serious question.  However, in view of the Court's resolution of the statements' admissibility on the broader grounds of personal knowledge, the Court need not definitively resolve this thorny question, and need only observe that this presents yet another problematic obstacle to the question of the statements' admissibility under a hearsay exception.

[5] Because the fact of the fall is not in dispute, it is unnecessary to determine whether the portions of the statement relating to the fall itself would be admissible under this exception.  However, it is by no means clear from the statements themselves that the unidentified declarants -- who were standing outside the vestibule at the time of the fall -- even witnessed Plaintiff's fall.  Indeed, the only

11

mopping of the floor -- which the statement is offered to prove as the event causing the fall -- is a prior, independent event.

The excited utterance exception has a less stringent temporal requirement than the present sense impression, requiring only that the statements "relate to the startling event or condition."  Fed. R. Evid. 803 advisory committee's note.  However, "[i]t should be kept in mind that as soon as the excited utterance goes beyond description of the exciting event and deals with past facts or with the future it may tend to take on a reflective quality and must be more carefully scrutinized."  *Murphy Auto Parts Co. v. Ball*, 249 F.2d 508, 512 (D.C. Cir. 1957).  Certainly, there are cases in which statements describing the events precipitating an excited utterance have been admitted as "relating to" the startling event.  *See, e.g.*, *Sanitary Grocery Co. v. Snead*, 90 F.2d 374 (D.C. Cir. 1937) (admitting Defendant's employee's spontaneous statement, following plaintiff's slip-and-fall, that he had been too busy to clean-up the lettuce causing the fall); *Wright v. Swann*, 261 Or. 440, 493 P.2d 148 (Or. 1972) (admitting unidentified declarant's statement -- corroborated by police report -- that plaintiff "darted out in front of [my car] and ran into the side of your car.").  *But see United States v. Alarcon-Simi*¸ 300 F.3d 1172 (2002) (finding plaintiff's purportedly exculpatory excited utterance inadmissible, as his

---

evidence indicating that the declarants saw the fall is Plaintiff's daughter's testimony asserting that fact.  However, Ms. Bell claims to have been looking at Plaintiff as she fell, not the declarants, which raises the question of how she knows the declarants saw her mother fall.  These facts, suggesting that the Court can only speculate as to whether the declarants actually saw the exciting event -- Plaintiff's fall -- raise serious questions regarding whether the declarants were actually in an excited state when they made the alleged declarations.

protestation of innocence "did not relate to any incident that occurred *at the time of his arrest*.").

However, it is equally clear that declarants in such cases were direct participants in the events described and / or clearly possessed personal knowledge of the facts asserted and observed the events as part of a seamless occurrence connecting the prior fact to the startling event. *See, e.g.*, *Sanitary Grocery Co.*, 90 F.2d 374 (employee asserted personal knowledge of lettuce on floor, his failure to remedy the condition, and that plaintiff slipped on the lettuce); *Wright v. Swann*, 261 Or. 440 (unidentified declarant observed plaintiff run in front of her car before immediately running into defendant's car).

It is at precisely this point of distinction that we see why the two hearsay exceptions at issue here require the out-of-court declarant to be able to establish personal knowledge about the events described by the hearsay statement, and the factual statements offered by Plaintiff here demonstrate the wisdom of this personal knowledge requirement.  Here, the statements are offered to establish the event -- the mopping of the floor -- and are made by unidentified, and apparently now unidentifiable, declarants. This obviously raises the problem of establishing the foundation for their statements, as all witnesses -- and certainly all hearsay declarants -- must have personal knowledge of the events they describe.  Indeed, the advisory committee notes for Fed. R. Evid. 803 unambiguously state that "[i]n a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge."  *See also, e.g.*, *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995);

13

*Miller v. Keating*, 54 F.2d 507, 511 (3d Cir. 1985); *United States v. Stratton*, 779 F.2d 820, 829 (2d Cir. 1985), *cert. denied*, 476 U.S. 1162 (1986).

The Rule establishing the personal knowledge requirement provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602. While the rule "does not govern the situation of a witness who testifies to a hearsay statement as such," it prohibits a witness from testifying to prove the truth of a hearsay statement unless the proponent can establish that the declarant had personal knowledge of the content of her statement.  Fed. R. Evid. 602 advisory committee's note.

Here, Plaintiff and her daughter allege to have personal knowledge of the fact that an unidentified declarant stated that someone had just mopped the floor, and would be able to testify to that statement to prove that it was made.  However, Plaintiff is not offering the statement for that purpose.  Rather, Plaintiff offers the statement to prove that an agent of Defendant had, in fact, just mopped the floor, thereby attempting to present evidence that Defendant itself created the alleged dangerous condition.  Thus, for our purposes, the personal knowledge at issue is not whether the statement was made, but whether and when the unidentified declarants personally observed someone mop the floor.  Viewed in this important context, in order to satisfy the requirements of Rule 602, Plaintiff must demonstrate that the unidentified declarants had personal knowledge of the mopping.

> While a witness who gives testimony containing hearsay may have perceived an out of court statement with her senses, the testimony is offered to prove facts observed by the hearsay declarant, not the witness.  Thus, the

personal knowledge requirement is satisfied only where the testimony of a witness who quotes an out of court statement is offered for the limited purpose of proving that the out of court statement was made or that the witness heard the statement made.  The requirement might not be satisfied if the testimony is offered to prove the facts asserted in the statement.  To satisfy Rule 602 in such a case, it also must be shown that the hearsay declarant had personal knowledge of the facts asserted in her statement.

27 Fed. Prac. & Proc. Evid. § 6026 (2d ed.).

As the proponent of this testimony, Plaintiff bears the burden of establishing the unidentified declarants' personal knowledge "by a preponderance of the evidence." *Keating*, 54 F.2d at 511.  Plaintiff has this burden under both the present sense impression and excited utterance exceptions to the general rule against admitting hearsay evidence. *See Bemis*, 45 F.3d at 1373 (9th Cir. 1995) ("Specifically, this requirement that a declarant have personal knowledge of the events described applies to the present sense impression exception.  Similarly, the excited utterance exception is only available if the declarant has firsthand knowledge of the subject matter of her statement.") (internal citations and quotations omitted).

Thus, the Court must determine whether Plaintiff has demonstrated by a preponderance of the evidence that the unidentified declarants had personal knowledge of the events described in their statements.[6]

---

[6] Courts often address the question of personal knowledge within the context of the hearsay exceptions themselves, as both Fed. R. Evid. 803(1) & (2) contain an element within which personal knowledge is implicit.  *See, e.g.*, *Miller v. Crown Amusements, Inc.*, 821 F. Supp. 703, 705 (S.D. Ga. 1993) (stating that Fed. R. Evid. 803(1) requires that "the declarant must have seen the event"); *Miller v. Keating*, 754 F.2d 507, 510 (3d Cir. 1985) (listing Fed. R. Evid. 803(2) as requiring "a declarant who appears to have had opportunity to observe personally

### i. Plaintiff has not established that the unidentified declarants personally observed Defendant's employee mopping the vestibule

To carry her burden of demonstrating the unidentified declarants' personal knowledge of the events described in their statements, Plaintiff offers only the statements themselves. In the context of these hearsay exceptions, where an unidentified declarant's capacity to observe can be neither substantiated nor attacked, courts are hesitant to uphold a declarant's statement -- standing alone -- as sufficient basis to infer personal knowledge. Fed. R. Evid. 803 advisory committee's note ("However, when declarant is an unidentified bystander, the cases indicate hesitancy in upholding the statement alone as sufficient.") (citing *Garrett v. Howden*, 73 N.M. 307, 387 P.2d 874 (1963); *Beck v. Dye*, 200 Wash. 1, 92 P.2d 1113 (1939)); *see also, e.g., Miller v. Keating*, 754 F.2d 507, 511 (3d Cir. 1985) ("When there is no evidence of personal perception, apart from the declaration itself, courts have hesitated to allow the excited utterance to stand alone as evidence of the declarant's opportunity to observe."); *Ramrattan v. Burger King Corp.* 656 F. Supp. 522, 528 (D. Md. 1987) ("Here, the bystanders are unidentified, and their capacities to observe can neither be substantiated nor attacked. In such cases, courts have hesitated to uphold the statement alone as sufficient evidence of declarant's opportunity to observe."). While Plaintiff may prove personal knowledge through circumstantial

---

the events"). By way of context, the Court has already discussed -- and will discuss further -- why a showing of personal knowledge is particularly important in establishing the prerequisites for admission under these hearsay exceptions, particularly in the circumstances presented in this case.

16

evidence, that evidence must not be so scanty as to forfeit the "guarantees of trustworthiness" which form the hallmark of all exceptions to the hearsay rule. *Keating*, 754 F.2d at 511.

In *Miller v. Crown Amusements*, *Inc.*, 821 F. Supp. 703, 706 (S.D. Ga. 1993), for example, the court admitted an unidentified declarant's 911 call describing the circumstances surrounding a car accident. In deciding this "difficult matter," the court emphasized that the unidentified declarant "specifically stated, 'We *noticed* the truck sideswipe a person'" as evidence that the declarant personally observed the accident. (emphasis added). It also noted other indicia of the statement's reliability, such as (i) that the timing of the call was consistent with amount of time it would take to reach a phone from the point of the accident; and (ii) that since the call was recorded, there was no uncertainty as to the actual content of the statement, or the fact that it was made.

The lack of such indicia of reliability -- particularly explicit claims of personal observation -- in other cases has barred admission of an unidentified declarant's statements. For example, *Miller v. Keating*, 754 F.2d at 511, involved a personal injury action that sought to determine liability for a multi-vehicle accident. After exiting his car and comforting the occupants of another vehicle, a participant in the accident testified that he was approached by an unidentified declarant who asserted that "the bastard [plaintiff] tried to cut in." Finding that statement insufficient to infer that the unidentified declarant actually saw plaintiff "cut in," the Third Circuit reversed the district court's decision to admit that testimony, as:

> [T]he record is empty of any circumstances from which the trial court could have inferred, by a preponderance, that the declarant saw [plaintiff] "cut in." The disputed declaration itself does not proclaim it. Indeed, the district judge acknowledged as much in his opinion denying plaintiffs' motion for a new trial. Nevertheless, he drew an inference of perception, reasoning that "the declarant would have made the declaration only if he was in a position to observe the collision." Yet the statements reported by the Parrises -- "the bastard tried to cut in" and "the s.o.b., or some words like that, tried to cut in" -- alone, do not show more likely than not that the declarant saw the event. The declarant might have been drawing a conclusion on the basis of what he saw as he approached the scene of the accident. He might have been hypothesizing or repeating what someone else had said.

*Id.* (internal citations omitted).

Similarly, in *Beck v. Dye*, a police officer testified to arriving at the scene of an accident and being told by an unidentified declarant that defendant caused the accident by running a red light. 200 Wash. 1, 10 (1939). After examining the history of cases under the *res gestae* rule, the court concluded that this statement was inadmissible because:

> It was not shown, nor is there evidence from which it reasonably can be inferred, that the persons who are purported to have made the statements saw the appellant drive into the intersection against the red light. It is purely a matter of speculation whether they themselves observed the condition of the signal light or were even in the vicinity when appellant drove into the intersection. For aught the record discloses, they may have been repeating merely what others had told them, or perchance reconstructing the initial occurrence from what they finally saw.

*Id.*

Indeed, even in those cases in which the declarant is identified, courts have required some corroborative evidence that the declarant personally observed the subject matter of the statement. In *McClure v. Price*, a witness testified that he was looking out of a barber shop window and observed a car wreck. As part of his testimony, the witness

18

claimed that his fellow barber "saw the McClure car approaching the intersection and exclaimed, 'The dern fool in [sic] going to kill himself,' or something to that effect." 300 F.2d 538, 545 (4th Cir. 1962). The Fourth Circuit upheld the district court's refusal to admit this portion of the testimony, as "at no point in his testimony did [the second barber] say that he saw the McClure car before the collision."

The Sixth Circuit has also recognized that the statement of a declarant -- standing by itself -- may not be sufficient to provide the foundation for its admissibility. In *United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007), defendant sought to exclude the contents of a 911 call that had been admitted as an excited utterance. In the call, the declarant told the emergency operator that she "saw [defendant] with a gun in his hand," "observed him cock the weapon," and "pulled a gun on [her] and said he was going to kill [her]."[7] *Id.* at 180. Responding to the dissent's argument that these statements were inadmissible as excited utterances because the only evidence of the startling event justifying their admission -- that defendant threatened declarant with a gun -- was the statements themselves, the Sixth Circuit dismissed the dissent's concern "because considerable non-hearsay evidence corroborated the anxiety induced nature of the event." *Id.* at 185.

---

[7] Because the declarant in *Arnold* was identified, and because there were other indicia of reliability, the Sixth Circuit did not address the preliminary issue of whether the declarant's statements, standing alone, demonstrated by a preponderance of the evidence that declarant actually saw the events she described. However, it should be noted that declarant's statements that she "saw [defendant] with a gun in his hand" and "observed him cock the weapon" contain explicit assertions of first-hand knowledge, and consequently appear more reliable than the statements offered in the present matter. And, of course, in *Arnold* the statements were actually recorded.

Citing other evidence -- such as the accuracy of the declarant's description of defendant's gun and the officers' personal observation of declarant's distraught demeanor -- the court concluded that "[t]his dispute, in short, is not one of the 'very few cases' in which this 'knotty theoretical problem' has raised its head." *Id.* Thus, although *Arnold* is not such a case, it demonstrates that even in cases where the declarant is identifiable, courts would hesitate to allow the declarant's statement itself to provide the sole foundation for its own admissibility without some reliable corroborative evidence.

Courts should be particularly vigilant in policing the personal knowledge requirement where the only witness able to testify to a statement made by an unidentified declarant is a party in interest. In this case, the unidentified declarants' statement that Defendant's employee was "just mopping the [mother f--king] floor" provides no personal knowledge foundation for the Court to conclude, by a preponderance of the evidence, that the declarants saw an employee mop the floor. Further, the only witnesses even able to testify that the statement was made are the Plaintiff herself and Plaintiff's daughter, neither of whom were able to provide any independent foundation to support a showing that the unidentified declarants had personal knowledge of the mopping of the floor. As in *Keating* and *Beck*, nothing in the declarants' statements suggests beyond mere speculation that they actually saw someone mopping the vestibule. Their statements that "they had been out there mopping" and "they were just mopping the [mother f--king] floor" are no less definite assertions of personal knowledge than the statement in *Keating* that "the bastard [plaintiff] tried to cut in" or the statement in *Beck* that defendant had run the red light. This is not a case like *Arnold* or *Miller*, where the

declarant explicitly stated -- on tape -- that she observed the incident at issue.  Nor is there any non-hearsay evidence supporting the occurrence of the underlying event -- as there was in *Arnold* -- or suggesting that the statements were reliable.  Indeed, as with *Keating* and *Beck*, there was no circumstantial evidence -- besides these statements themselves -- indicating that the floor was mopped at all that day.

As a final matter, it bears noting again that the personal knowledge problems here are exacerbated by the fact that the statements themselves are not specifically about the exciting event -- Plaintiff's fall -- which presumably gave rise to either an excited utterance or present sense impression, but rather a temporally separate and independent event -- the alleged mopping -- which purportedly preceded and precipitated Plaintiff's fall by an unknown and unproven period of time.  This, of course, causes a heightened concern for reliability and trustworthiness, as the event of mopping the floor, by itself, is not particularly noteworthy.

Absent any additional evidence indicating that the unidentified declarants actually saw Defendant's employee mop the floor, Plaintiff has failed to carry its burden of demonstrating the declarants' personal knowledge.  This failure renders their statements inadmissible.  Because these statements are the only evidence indicating that Defendant was responsible for the alleged dangerous condition, Plaintiff's theory that Defendant had notice because it created the dangerous condition fails as a matter of law.

**b.    Plaintiff cannot demonstrate that Defendant had constructive notice of the alleged dangerous condition**

Plaintiff has also failed to demonstrate that Defendant had constructive notice of the alleged dangerous condition.  Plaintiff may establish constructive notice by presenting evidence that the hazardous condition was of such a character or "ha[d] existed for a length of time sufficient to have enabled a reasonably careful storekeeper to discover it." *Whitmore v. Sears, Roebuck & Co.*, 89 Mich. App. 3, 8, 279 N.W.2d 318 (1979). Further, "[a] defendant's general knowledge that a condition can materialize is not sufficient to create constructive knowledge of the existence of a particular condition at a specific time." *Herwig-Tucker v. Detroit Entertainment, LLC*, 2004 WL 550736, at *1 (Mich. App. Mar. 18, 2004) (citing *Winfrey*, 6 Mich. App. at 509-10).

Without evidence supporting Plaintiff's assertion that Defendant's negligence caused the floor to become wet, the evidence on the record cannot sustain a finding that Defendant had both notice of the alleged dangerous condition and a reasonable opportunity to prevent Plaintiff's harm.  Nothing in the record indicates when the water accumulated on the floor, how much water was on the floor, or what caused the asserted accumulation of water.  Without evidence establishing how long the dangerous condition existed, it is impossible to rationally conclude that the condition "existed for a length of time sufficient to have enabled a reasonably careful storekeeper to discover it." *Whitmore*, 89 Mich. App. at 8.

Any implication that the presence of a security guard near the vestibule indicates that the Defendant must have been aware of the slippery condition is purely speculative.

22

The security guard may well have been near the vestibule, and entrance, to the store for any and all of the more obvious reasons that security guards are stationed at the entry and exit points of a store.  Beyond that, such an implication is belied by the testimony of Plaintiff herself.  Despite the fact that she walked "very carefully" through the vestibule while "looking down" at the ground in front of her -- *i.e.*, looking *directly at the allegedly hazardous condition* -- Plaintiff testifies that she did not see any water before she fell.  Neither did her daughter.  Further, neither Plaintiff nor her daughter saw any water on the ground after Plaintiff stood up.  It is not reasonable to conclude that the security guard could reasonably have discovered a common, hazardous condition -- water -- that neither Plaintiff nor her daughter saw when they looked directly at it.

Indeed, the properly submitted evidence on the record indicates that Defendant took reasonable care to keep the property safe for invitees.  As Ms. Greer noted in her affidavit, the vestibule area was subject to multiple inspections, none of which revealed a hazardous condition.  This fact is corroborated by the absence of any complaints, slips, or other concerns regarding that area, despite the fact that many other patrons had traversed that vestibule that day.

As Plaintiff has submitted insufficient evidence to support a finding that Defendant breached its duty -- an essential element of negligence -- Defendant cannot be found negligent as a matter of law.  *Celotex,* 477 U.S. at 322 ("the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

23

the burden of proof at trial.").  Because Plaintiff's inability to demonstrate a breach of duty mandates summary judgment in Defendant's favor, it is unnecessary to address the remaining elements of negligence.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

Dated:  March 28, 2013                    s/Gerald E. Rosen
                                          GERALD E. ROSEN
                                          CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 28, 2013, by electronic and/or ordinary mail.

                                          s/Julie Owens
                                          Case Manager, (313) 234-5135

24